**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WILMA DELONEY, successor in interest to DECEDENT JOHN MAYBERRY**<br><br>**Plaintiff,**<br><br>v.<br><br>**COUNTY OF FRESNO, et al.,**<br><br>**Defendants.** | **1:17-cv-01336-LJO-EPG**<br><br>**ORDER GRANTING DEFENDANT CORIZON HEALTH INC.'S MOTION TO DISMISS**<br><br>**(ECF Nos. 29, 30, 31)** |

## I. <u>INTRODUCTION</u>

Plaintiff Wilma Deloney, Decedent John Mayberry's ("Decedent" or "Mayberry") mother, individually and as successor in interest to Mayberry's estate brings claims pursuant to 42 U.S.C § 1983 ("§ 1983") and California Code of Civil Procedure § 377.60 ("§ 377.60") related to the suicide of Mayberry while in custody.  Plaintiff sued the County of Fresno ("County"); deputy sheriffs Vinton, McCoy, Ramos, Canel, and Yusif; Corizon Health, Inc. ("Corizon"); Corizon mental health staff members Yang, Kirkorian, Santos, Trow, and Whitecotton, and Corizon licensed nurse Garcia ("Corizon employees"), and Does 1-50.

On April 6, 2018, the Court granted Corizon's motion to dismiss the claims against it and granted Plaintiff leave to amend. (ECF No. 16.) On April 26, 2018, Plaintiff filed a first amended complaint ("FAC"). (ECF No. 22.) On May 17, 2018, Defendant Corizon again moved to dismiss the FAC's § 1983 claims and § 377.60 claim pursuant to its Rule 12(b)(6) motion. (ECF No. 29.) Additionally,

Corizon also moved to dismiss Plaintiff's injunctive relief request pursuant to Rule 12(b)(1). (*Id.*) On May 31, 2018, Plaintiff filed an opposition (ECF No. 30) and Corizon replied on June 7, 2018. (ECF No. 31.)[1] The matter was taken under submission on the papers pursuant to Local Rule 230(g). For reasons set forth below, Corizon's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## II. **FACTUAL BACKGROUND**[2]

Decedent Mayberry was a pretrial detainee in Fresno County Jail ("Jail") at the time of his death on August 2, 2016. (FAC ¶¶ 1, 70.) The complaint alleges that Decedent was transferred multiple times between medium security housing, administrative segregation lockdown housing, safety housing, and isolation housing between March 11, 2016 and August 2, 2016. (*Id.* at ¶ 28.) The FAC states that Mayberry was subject to at least 16 transfers during this time period as a result of being deemed a threat to the safety of himself and others. (*Id.*) Such transfers were made at the direction of multiple Corizon mental health staff members and with the approval of multiple county employees. (*Id.*) Decedent was suicidal on multiple occasions at the Jail and was regarded as high suicide risk on prior occasions. (*Id.* at ¶ 37.) Decedent's history in this regard was allegedly accessible to all Defendants. (*Id.* at ¶¶ 37-38.)

To address the lack of specific allegations concerning Corizon or Corizon employees precipitating dismissal in the Court's prior Order, ECF No. 16, the FAC added the following specific allegations concerning the Corizon employees' actions. On July 2, 2016, Corizon Defendant Garcia recommended Mayberry be transferred from administrative segregation lockdown housing ("AS") to a safety cell. (FAC ¶ 29.) Later on that same day, Corizon Defendant Yang transferred Mayberry back to

---

[1] The County of Fresno and deputy sheriffs Vinton, McCoy, Ramos, Canel, and Yusif answered the complaint. (ECF Nos. 8, 26.) The parties stipulated to the dismissal of Defendant Vinton pursuant to Federal Rules of Civil Procedure, Rule 41(a)(1). (ECF No. 25.) None of the individual Corizon employees have appeared in this action.

[2] The following facts are drawn from Plaintiff's FAC in this matter, and are accepted as true only for the purpose of this motion to dismiss. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). The Court focuses on the allegations concerning Corizon and its employees since this motion is brought by Corizon.

AS. (*Id.* ¶ 30.) On July 3, Corizon Defendant Kirkorian recommended Mayberry be transferred to a safety cell due to being a danger to himself. (*Id.* a ¶ 31.) On July 4, 2016, Corizon Defendant Santos recommended that Mayberry be transferred back to AS. (*Id.*) On July 4, 2016, Mayberry attempted suicide by attempting to hang himself with a bedsheet and on that same day Corizon Defendant Garcia recommended he be transferred to a safety cell. (*Id.* a ¶ 32.) On July 5, 2016, Corizon Defendant Trow recommended that Mayberry be transferred to an isolation cell and restricted to use of safety cell garments and blankets to prevent self-harm. (*Id.* a ¶ 33.) On July 23, 2016, eighteen days after being transferred to isolation housing, Corizon Defendant Whitecotton recommended Mayberry be transferred back to AS and lifted his garment restrictions, which allowed Mayberry to have access to standard issue blankets and sheets which he had previously attempted suicide with, and reduced his visual monitoring to once per hour. (*Id.* ¶¶ 34, 49.) On July 27, 2018, Mayberry attempted suicide and County Defendants did not respond. (*Id.* ¶ 35.) It is not clear from the FAC if any precautions were taken after the July 27 suicide attempt but the Court assumes Mayberry remained in AS housing.

On August 2, 2016, while under the supervision of County Defendants Ramos and Canel in the AS unit, but not on heightened suicide watch, Decedent hanged himself in his cell. (*Id.* ¶ 39.) The complaint further alleges that Defendants Canel and Ramos[3] did not conduct actual checks of Decedent "for an extended period of time in violation of County policies[,]" which required visual monitoring not less than twice every thirty minutes (*Id.* ¶¶ 36, 39, 50.) Plaintiff alleges that Corizon Defendant Whitecotton knew of Decedent's previous attempt to hang himself using bed sheets on July 4, 2016, but nonetheless allowed Mayberry to have access to "instrumentalities of suicide," including bedsheets, and allowed for reduced visual monitoring of Decedent to once per hour by transferring him to AS, which ultimately resulted in his suicide on August 2, 2016. (*Id.* ¶ 49; *see also id.* ¶¶ 40, 52, 65.)

---

[3] The FAC appears to have a typographical error referencing a Defendant De La Cruz who is not otherwise identified in the original complaint or the FAC and is not named as a Defendant. (*Id.* ¶¶ 39, 53, 58, 66.)

Plaintiff alleges that Decedent was deprived of his constitutional right to life and mental health care for his serious mental health needs, ultimately causing his suicide. (*Id.* ¶ 25.) Plaintiff Deloney, Decedent's mother, brings these claims as Decedent's successor in interest and individually for the deprivation of her right to her familial relationship with her son. (*Id.* ¶ 8.) Plaintiff brings claims against the County, several deputy sheriffs employed by the County, Corizon, and six Corizon employees, including Defendants Garcia, Yang, Kirkorian, Santos, Trow, and Whitecotton. (*Id.* ¶¶ 9-21.)[4] The FAC alleges that Corizon provided medical and nursing care to prisoners and detainees in Fresno County jails pursuant to a contract with the County. (*Id.* ¶10.) The complaint further alleges that Corizon was "responsible for making and enforcing policies, procedures and training relating to medical care of prisoners and detainees" at the jail. (*Id.*).

The FAC, like the original complaint, contains five causes of action, four of which arise under 42 U.S.C. § 1983. (*Id.* ¶¶ 46-67.) Plaintiff's first cause of action alleges § 1983 claims for wrongful death for deliberate indifference by all Defendants to Decedent's serious medical, physical, and mental health needs during his detention. (*Id.* ¶¶ 46-50.) Plaintiff's second cause of action alleges that Defendants' actions deprived Plaintiff of her parent-child relationship with her son in violation of Plaintiff's Fourteenth Amendment right to substantive due process. (*Id.* ¶¶ 51-54.)[5] Plaintiff's fourth cause of action alleges violation of Decedent's right to substantive due process under Fourteenth Amendment against all Defendants for deliberate indifference to Decedent's medical and psychiatric care in violation of the Fourteenth Amendment. (*Id.* ¶¶ 63-67.) The fifth cause of action is against all Defendants for Mayberry's wrongful death under a theory of negligence pursuant to California Civil Procedure Code § 377.60. (*Id.* ¶¶ 68-74.)

---

[4] The original complaint identified Defendants Yang, Kirkorian, Santos, Trow, and Whitecotton as employees of the County. (ECF No. 1 ¶¶ 17-21.)

[5] Plaintiff's third cause of action is not directly relevant to this motion since it is not brought against Corizon but alleges *Monell* liability against the County and unnamed defendants for customs, practices, and policies. (*Id.* ¶¶ 55-62.)

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal.,*

*Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. <u>DISCUSSION</u>

Defendant Corizon again moves to dismiss the four causes of action that Plaintiff has brought against it, including three causes of action pursuant to § 1983 for deliberate indifference to both Mayberry and Plaintiff's constitutional rights in not providing adequate medical care, and a wrongful death negligence claim pursuant to California Civil Procedure Code § 377.60.[6] The parties' briefing addresses the § 1983 claims as if there are two § 1983 claims. First, the parties' briefing addresses the legal standard for deliberate indifference for inadequate medical care with respect to the individual Corizon employees. Second, the parties address the *Monell* standard[7] for policies or customs of Corizon. The Court correspondingly addresses the parties' § 1983 arguments in this way. Corizon argues that Plaintiff's allegations fail to state a Fourteenth Amendment claim against any Corizon employee and

---

[6] In their motion to dismiss, Corizon does not distinguish between the first, second, and fourth causes of action and states that Plaintiff brings three functionally duplicative § 1983 claims. (ECF No. 29 at 5.) Plaintiff does not differentiate between the three § 1983 claims in its opposition. (ECF No. 30.) To the extent that the first, second, and fourth causes of action overlap in the legal theories of liability they claim under § 1983, the Court does not address them separately. (*Compare* FAC ¶¶ 48-49, *with id.* ¶ 67.) The Court notes that it appears from the allegations that the fourth cause of action is no different from the first cause of action. *See, e.g.*, *Estate of Vargas v. Binnewies*, No. 116CV01240, 2017 WL 2289357, at *2, n. 4 (E.D. Cal. May 25, 2017).
[7] *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978).

fail to state a cognizable *Monell* claim because there are no alleged facts to support the necessary elements of such claims. (ECF No. 29.) Plaintiff's opposition argues that the FAC adequately alleges that each Corizon employee was well aware of the substantial risk of harm that Mayberry posed to himself and despite that knowledge provided him with instrumentation to hang himself. (ECF No. 30 at 2.) Additionally, Plaintiff argues that "Defendant Corizon's policy, practice and custom of classifying inmates and inadequately training its employees directly caused harm to Mayberry." (*Id.*)

The court addresses the insufficiency of the § 1983 and § 377.60 claims below. The Court also addresses Corizon's motion to dismiss the request for injunctive relief.

### A.   Section 1983 Claims

To state a claim under § 1983, plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendant's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).[8] Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct. *See Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[T]he Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks omitted). The cognizable level of executive abuse of power is that which "shocks the conscience" and "violates the decencies of civilized conduct." *Id.* at 846. Mere negligence or liability grounded in tort does not meet the standard for a substantive due process claim. *Id.* at 848-49. A Plaintiff can satisfy the "shocks the conscience" standard either by (1) showing that a state official acted with "deliberate indifference," or (2) showing that a state official "acted with a purpose to harm." *Porter v.*

_____

[8] It is undisputed that Corizon was acting under the color of state law.

7

*Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Plaintiff's claims allege deliberate indifference on the part of Defendants.[9]

## 1.   <u>Deliberate Indifference As To The Individual Corizon Defendants</u>

Plaintiff alleges that six Corizon Defendants, Garcia, Yang, Kirkorian, Santos, Trow, and Whitecotton, were deliberately indifferent to Mayberry's serious medical and mental health needs. Because both parties' briefs have addressed the viability of the deliberate indifference claims as to the individual Corizon employees, the Court finds it appropriate to address the plausibility of these claims on Corizon's motion to dismiss even though the individual Corizon Defendants have not appeared. (*See* ECF No. 29 at 6-7; ECF No. 30 at 5-7.)[10] The factual basis of the individual Corizon employee claims are equivalent to those for the *Monell* claim against Corizon and there is overlap in the legal analysis. Accordingly, it promotes judicial efficiency to address both the individual Corizon employee claims and the Corizon *Monell* claim. The Court addresses the individual deliberate indifference claims first.

"The duty to protect detainees from suicide is grounded in the substantive liberty interest to adequate medical care." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017). To state a § 1983 deliberate indifference claim for inadequate medical care, a prisoner plaintiff must allege

---

[9] *See Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011) ("The gravamen of [Plaintiff's] claim against [Defendant Sheriff] is deliberate indifference."); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a deliberate indifference standard.") (internal quotation marks and citation omitted).

[10] The Ninth Circuit has "upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared." *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where Plaintiff had "full and fair opportunity to brief and present evidence" on claims against nonappearing defendant); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("[a] District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *Hornbuckle v. Matevousian*, No. 16-CV-05527, 2017 WL 6513643, at *6 (N.D. Cal. Dec. 20, 2017) (granting summary judgment, including for nonappearing defendant, a correction officer, and holding nonappearing defendant was not deliberately indifferent to serious medical needs).

both a serious medical need and that defendant official acted with a culpable state of mind, *i.e.* with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *Estate of Joshua Claypole v. County of San Mateo*, No. 14-CV-02730, 2016 WL 127450, at *5 (N.D. Cal. Jan. 12, 2016) ("To set forth a constitutional claim under the Eighth Amendment – or, here, under the Fourteenth Amendment – a plaintiff must show (1) a serious medical need and (2) that an official's response to the need was deliberately indifferent.").[11] A "heightened" risk of suicide is considered a serious medical need. *Simmons*, 609 F.3d at 1018. Plaintiff has alleged sufficient facts to show that Decedent was at high risk for suicide based on his previous suicide attempt(s) and satisfies the first prong. With respect to the second prong, acting with deliberate indifference, the Ninth Circuit recently announced an objective deliberate indifference standard is applicable to pretrial detainee claims against individual defendants for inadequate medical care under the Fourteenth Amendment and explained the elements of such a claim:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

---

[11] Here, the FAC alleges that Mayberry was a pretrial detainee; accordingly, the Fourteenth Amendment applies. *See Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002) ("Because [a pretrial detainee] has not been convicted of a crime, but has only been arrested, [the detainee's right to receive adequate medical care] derive[s] from the due process clause [of the Fourteenth Amendment] rather than from the Eighth Amendment's protection against cruel and unusual punishment") *overruled on other grounds by Castro*, 833 F.3d 1060 (9th Cir. 2016); (FAC ¶ 70.) The Ninth Circuit recently held that a pretrial detainee's claims against individual defendants for inadequate medical care under the Fourteenth Amendment due process clause "must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). This overruled the existing precedent which previously held that the same subjective deliberate indifference standard that applied to Eight Amendment claims applied to Fourteenth Amendment claims by pretrial detainees. This objective deliberate indifference standard is less stringent than the standard applicable under the Eighth Amendment. *Id.* at 1125 n. 4.

*Gordon*, 888 F.3d at 1124-25. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 at 1071).

The specific allegations in the FAC concerning the actions of the individual Corizon employees is "16 housing transfers" from March to August of 2016. As an initial matter, the Court counts seven specifically alleged housing transfers alleged in the FAC – not 16. (FAC ¶¶ 29-34.)[12] Specifically, Plaintiff alleges the following transfers: (1) on July 2, Corizon Defendant Garcia transferred Mayberry from AS to a safety cell; (2) on July 2, Corizon Defendant Yang moved Mayberry from the safety cell back to AS; (3) on July 3, Corizon Defendant Kirkorian moved Mayberry to a safety cell; (4) on July 4, Corizon Defendant Santos moved Mayberry from the safety cell to AS; (5) on July 4, following Mayberry's suicide attempt on that day, Corizon Defendant Garcia recommended he be transferred into a safety cell; (6) on July 5, Corizon Defendant Trow moved Mayberry from his safety cell to an isolation cell; (7) on July 23, Corizon Defendant Whitecotton moved Mayberry from his isolation cell back to AS where he was allowed access to standard issue garments including bedsheets which he used in his previous suicide attempt. (FAC ¶¶ 29-34.) There are two alleged suicide attempts in the FAC: (1) the first attempt occurred on July 4, where Mayberry attempted to hang himself with a bedsheet while in AS, after which Mayberry was moved into a safety cell and then into an isolation cell, and (2) the second attempt occurred on July 27, by unspecified means while Mayberry was housed in AS, after which he apparently remained in AS until his suicide on August 2. (*Id.* ¶¶ 32-39.)

### a.  **Defendants Garcia, Kirkorian, and Trow**

Four of the seven alleged housing transfers actually involved placing Mayberry in *safer* housing presumably based on his needs of being at risk for suicide. These are the only actions that are alleged as

---

[12] To the extent there were other housing transfers not specifically alleged, the Court is not able to draw any inferences from such unspecified transfers.

to Defendants Garcia, Kirkorian, and Trow. These precautionary transfers did not "put the plaintiff at substantial risk of suffering serious harm" but rather show reasonable measures taken to abate the risk to Mayberry. *See Gordon*, 888 F.3d at 1124-25. Accordingly, these four transfer decisions that put Plaintiff in safer conditions do not support an inference that any of these Corizon employees were deliberately indifferent to Mayberry's serious medical needs. *See, e.g.*, *Hanna ex rel. Henderson v. Cty. of Fresno*, No. 1:14-CV-00142, 2014 WL 6685986, at *8 (E.D. Cal. Nov. 26, 2014) (defendant's action of placing Plaintiff in suicide cell in jail for his own safety did not constitute deliberate indifference); *Claypole*, 2016 WL 693282, at *10 (granting summary judgment to defendant who was the shift supervisor and holding no reasonable juror could find defendant's response to serious medical need - expressing a suicidal ideation - was inadequate when defendant put decedent on suicide watch and into a safety cell and notified jail staff so that he would be evaluated). In short, these decisions are not examples where "a jail official knew a pretrial detainee was actively suicidal but failed to ensure that precautionary measures were undertaken." *Simmons*, 609 F.3d at 1018.

Accordingly, dismissal of the individual claims as to Defendant Garcia, Kirkorian, and Trow, who are only alleged to have made housing decisions that placed Mayberry in safer housing conditions, is appropriate.

### b. Defendants Yang and Santos

In addition, there are no allegations that indicate any Corizon employee was aware of a substantial risk of serious harm to Mayberry prior to the alleged July 4 suicide attempt.[13] Accordingly, the allegations that Defendants Yang and Santos moved Mayberry back to AS from safety housing (on

---

[13] Prior to July 4, the FAC does not allege whether any of the Corizon employees were aware of Decedent being a high suicide risk. It appears that Mayberry may have been monitored for suicide prior to July 2 based on the allegation that Corizon Defendant Garcia transferred him to a safety cell on July 2. (FAC ¶¶ 29, 32.) However, there are no specific facts alleged that any of the other Corizon employees were aware of a heightened suicide risk prior to the July 4 attempt or how they would have learned of such heightened suicide risk prior to the first alleged suicide attempt on July 4.

July 2 and July 4) prior to the July 4 suicide attempt do not indicate that a "reasonable official in the circumstances would have appreciated the high degree of risk involved" at that point in time, since there is nothing alleged that indicates that there was a substantial risk involved with respect to Mayberry prior to July 4. *See id.* The generalized allegations that all the Defendants were aware Mayberry had been suicidal on multiple occasions are not sufficient or specific as to when each Corizon Defendant became aware of Mayberry's suicide risk. *See Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (dismissal proper where plaintiff "merely alleged in a conclusory fashion that the officers 'knew, or should have known'" of the violation); *Dushane v. Sacramento Cty. Jail*, No. 2:13-CV-2518, 2014 WL 3867468, at *8 (E.D. Cal. Aug. 6, 2014) ("general allegations that these individuals worked in the jail, and 'had direct knowledge by grievance and operations' are not sufficient to state claims against them"); *Vivanco v. California Dep't of Corr. & Rehab.*, No. 117CV00434, 2017 WL 2547026, at *4 (E.D. Cal. June 13, 2017) ("General allegations that do not establish a link between the conduct alleged and specific defendants do not meet the minimal pleadings required to defend against a Rule 12(b)(6) motion.").

Of the seven alleged housing transfers, six happened almost a month prior to Decedent's suicide and Plaintiff does not allege how these prior housing decisions are linked to any other constitutional violation. Additionally, there are no facts alleged which allow the Court to infer that these housing transfers a month prior were somehow causally linked to Decedent's suicide. "To state a claim for relief, [Plaintiff is] required to allege facts demonstrating each individual's personal involvement in a constitutional violation." *Davis v. Folsom Cordova Unified Sch. Dist.*, 674 F. App'x 715, 717 (9th Cir. 2017). This requires a causal connection to the deprivation which Plaintiff complains. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* As the Supreme Court held in *Ashcroft v. Iqbal*, a Plaintiff must plead that each defendant, through the individual's own actions, has violated the Constitution. 556 U.S.

at 676; *see also Vivanco*, 2017 WL 2547026, at *3 (§ 1983 "explicitly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff"). There is no alleged causal link between Defendant Yang's and Santos' housing transfer decisions and the alleged constitutional violation – Decedent's suicide, a month later.

The FAC does not adequately allege that reasonable medical staff in Defendant Yang's and Santos' positions would have appreciated a high degree of risk in transferring Mayberry to AS prior to the July 4 suicide attempt. Nor are there allegation which allow the court to infer that a constitutional harm was caused by these July 2 and July 4 housing decisions. Therefore, dismissal of Corizon Defendants Yang and Santos is also appropriate.

### c.   Defendant Whitecotton

The only transfers following the July 4 suicide attempt are two transfers to safety and isolation housing – decisions that do not plausibly suggest deliberate indifference – followed by Whitecotton's transfer of Mayberry back to AS on July 23, 18 days after he was placed in isolation housing. There are no other allegations concerning Mayberry's mental state or medical care during this 18-day isolation period. Additionally, it is alleged that Mayberry attempted suicide again on July 27, but it is not clear what, if any, safety precautions were taken after this incident. However, the FAC faults Whitecotton as the decisionmaker for allowing Mayberry to move to and stay in AS and have access "instruments of suicide" even though he was aware that Mayberry had attempted suicide on July 4 with a bedsheet. (FAC at ¶ 65.) Accordingly, the only acts alleged that could plausibly demonstrate deliberate indifference to serious medical needs are those of Whitecotton who transferred Mayberry to AS on July 23, 2016 after a July 4, 2016 suicide attempt. This transfer effectively reduced visual monitoring and lifted safety cell garment restrictions. Mayberry again attempted suicide on July 27 and it appears that Whitecotton did not reinstate any garment restrictions following this July 27 attempt. Whitecotton's decision to allow Decedent access to bedsheets which he had recently attempted suicide with and his failure to respond with any precautionary measures to a second suicide attempt despite the allegations

that he was aware of the risk of harm, plausibly states a claim for deliberate indifference to Decedent's serious medical need of being a high suicide risk.

Accordingly, the § 1983 claims as to Corizon Defendants Garcia, Yang, Kirkorian, Santos, and Trow are DISMISSED WITH LEAVE TO AMEND. Because the Court's prior Order did not explicitly deal with the specific allegations involving the individual Corizon employees, Plaintiff is granted leave to amend the claims against these Defendants in their individual capacities.[14] The claims against Corizon Defendant Whitecotton survive.

### 2. *Monell* Claim As To Corizon

While the FAC has added facts of specific housing transfer decisions that were made by the individual Corizon employees, it still does not specifically identify a Corizon policy or custom. The FAC only alleges the following as to Corizon policy:

> 10. Defendant CORIZON provided medical and nursing care to prisoners and detainees in FRESNO County jails, pursuant to contract with the COUNTY OF FRESNO. *CORIZON and its employee and agents are responsible for making and enforcing policies, procedures, and training relating to the medical care of prisoners and detainees in Defendant COUNTY OF FRESNO's jails*, including providing reasonable medical care to prisoners and detainees, as well as providing reasonable medical care to specific prisoners or detainees as specifically ordered by FRESNO County Superior Court Judges in court orders directed at CORIZON, and all CORIZON policies, procedures, and training related thereto.
>
> . . .
>
> 40. With deliberate indifference, CORIZON by and through WHITECOTTON failed to give proper medical attention to DECEDENT, while knowing that DECEDENT was in dire need of immediate medical attention….Defendants failed to take necessary, proper, or adequate measures in order to prevent the violation of DECEDENT's and Plaintiff's rights, the suffering and death of DECEDENT, and injuries and damages to Plaintiff. Defendants were *untrained or improperly trained in the proper detention and supervision of pretrial detainees* at FRESNO County jail or ignored their training. This lack of adequate supervisorial training demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying with

---

[14] Plaintiff has already been granted leave to amend and the FAC continues to lack clarity and specificity. If Plaintiff decides to amend the complaint, counsel is cautioned in light of Fed. R. Civ. P. 11 to keep the legal standard in mind and to clarify how these individual Defendants actions are linked to any *constitutional* violations. A housing transfer does not amount to deliberate indifference to Decedent's constitutional rights without more. Plaintiff is advised that this will be the last opportunity to amend, an opportunity that should not be exercised unless facts exist to satisfy the requirements under the law. Notably, the FAC only references Whitecotton specifically in the causes of action and appears to indicate only his actions are culpable. (*See* FAC ¶¶ 49, 52, 65, 71.)

deliberate indifference the continuing negligent supervision of pretrial detainees, including DECEDENT, by Defendants.

(FAC ¶¶ 10, 40 (emphasis added)).

For the reasons discussed below, the Court finds that these generalized and conclusory allegations do not provide sufficient factual content to plausibly infer that a Corizon policy or custom existed or that it was the "moving force [behind] the constitutional violation[,]" as required to state a *Monell* claim against an entity such as Corizon.[15] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Plaintiff's opposition contends that "the varied medical care Mayberry received from Defendant Corizon employees evinces a policy so inadequate that it resulted in the violation of Mayberry's constitutional rights." (ECF No. 30 at 8.) However, the FAC does not have any specific factual allegations concerning *medical care* received by Mayberry. The only specific factual content relating to Corizon is the housing decisions of its employees presumably based on an assessment of his mental health.

"A municipality may be held liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009) (quoting *Monell*, 436 U.S. at 694). To establish municipal liability under § 1983, a plaintiff must show that (1) she was deprived of a constitutional right; (2) the County had a policy or custom;[16] (3) the policy

---

[15] As the Court indicated in its prior Order, a private entity such as Corizon "that contracts with the government to provide medical and mental health care may be considered a state actor whose conduct constitutes state action under Section 1983." *Estate of Jessie P. Contreras v. County of Glenn*, No. 2:09-CV-2468, 2010 WL 4983419, at *4 (E.D. Cal. Dec. 2, 2010) (citing *Jensen v. Lane County*, 222 F.3d 570, 574-75 (9th Cir. 2000)). The Ninth Circuit has held that there is "no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012); *Starr v. Alameda Cty. Jail*, No. 5:12-CV-04400, 2016 WL 6161519, at *2 (N.D. Cal. Oct. 24, 2016) ("the holdings of *Monell* and its progeny apply to Corizon"); *see also Johnson v. Corizon Health, Inc.*, No. 6:13-CV-1855, 2015 WL 1549257, at *10 (D. Or. Apr. 6, 2015) ("An entity such as Lane County or Corizon cannot be held liable under a theory of respondeat superior . . . [but] Corizon can be liable under [*Monell*].").

[16] Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent

15

or custom amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Id.* Under *Monell*, a local government body can be held liable under § 1983 for policies of inaction as well as policies of action. *Tsao*, 698 F.3d at 1143. In a case alleging a policy of inaction amounting to deliberate indifference, this requires showing that defendant "was on actual or constructive notice that its omission would likely result in a constitutional violation"; only then does the omission reflect a deliberate or conscious choice to violate the constitution. *Tsao*, 698 F.3d at 1145 (citations omitted); *see also Gibson*, 290 F.3d at 1194. "[W]hen the need to remedy the omission 'is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,'" the municipality can be said to be deliberately indifferent for the policy omission. *Gibson,* 290 F.3d at 1195 (quoting *Canton*, 489 U.S. at 390). With respect to the causation requirement, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the [entity] was the 'moving force' behind the injury alleged," *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997), such that the plaintiff must show "that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Tsao*, 698 F.3d at 1143 (internal quotation omitted).

While the FAC adds specific facts concerning housing transfer decisions made by Corizon employees to transfer Mayberry between July 2, 2016 and his suicide on August 2, 2016, there is no allegation that the housing decisions were made pursuant to some official Corizon policy.[17] The Court's

---

official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). The FAC does not contain any allegations to support a finding of a policy based on (1), (3), or (4). Nothing besides generalized, vague, and conclusory allegations refer to a specific Corizon formal or official policy. (FAC ¶¶ 10, 40.) Nor are there allegations that any of the Corizon Defendants were officials with final policymaking authority. Plaintiff is alleging a Corizon longstanding custom of inaction.

[17] Nor is it clear that Corizon is responsible for such housing policies – the FAC alleges Corizon is responsible by contract with Fresno County for policies "*relating to the medical care of prisoners and detainees,*" not housing. (FAC ¶ 10.)

prior Order specifically cautioned Plaintiff that Corizon "cannot be liable for the actions of its employees on a theory of *respondeat superior* and any amendment should keep the entire *Monell* standard in mind." (ECF No. 16 at 11 n.11 (citing *Tsao*, 698 F.3d at 1139 ("a municipality cannot be held liable solely because it employs a tortfeasor - or, in other words . . . on a *respondeat superior* theory. . . .") (internal citation omitted)).) Besides vague and generalized allegations of paragraph 10 of the FAC, the only other paragraph that alleges anything related to a potential Corizon policy or custom is paragraph 40. Plaintiff alleges that Corizon Defendant employees were "untrained or improperly trained in the proper detention and supervision of pretrial detainees at FRESNO County jail or ignored their training," and that the "lack of adequate supervisorial training demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying with deliberate indifference the continuing negligent supervision of pretrial detainees," like Mayberry. (FAC ¶ 40.) Plaintiff claims that "Corizon's failure to properly train its employees to identify and classify inmates that are suicidal and to protect inmates" constitutes a custom for *Monell* purposes. (ECF No. 30 at 8.) As evidence of this inadequate policy/failure to train, Plaintiff points to Mayberry's "16 housing transfers" and states that the "housing classification rollercoaster gives rise to the inference that Corizon maintains a policy allowing determinations on inmate risk of harm and housing determinations to be based on subjective beliefs rather than on objective facts." *Id.*

  a. **Failure To Train Or Inadequate Policy *Monell* Claims Require Actual Or Constructive Notice To Corizon**

  The Court interprets the allegations as failure to train claims or deficient policy claims since there are no allegations concerning an official or affirmative Corizon policy.[18] These *Monell* claims are allegations of a policy or custom of omission or inaction. Such claims are subject to "heightened requirements for establishing responsibility" which are necessary to avoid inappropriately imposing *respondeat superior* liability in violation of *Monell*. *Tsao*, 698 F.3d at 1143. As noted above, policy omission claims require

---

[18] Plaintiff's argument that Corizon had a housing policy based on subjective beliefs is no different than stating that Corizon had a deficient policy concerning housing decisions. (ECF No. 30 at 8.)

"actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao*, 698 F.3d at 1145 (citations omitted). Relatedly, in considering failure to train claims, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Tsao*, 698 F.3d at 1145 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). The absence of a pattern makes it "far less likely" that an entity was "on actual or constructive notice." *Id.* There exists a "narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 62-64 (internal citations omitted). In this "narrow range of circumstances," a single incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious." *Id.* (discussing *Canton*, 489 U.S. at 390).[19]

Plaintiff has not alleged a pattern of constitutional violations by Corizon employees resulting in other suicides that would provide Corizon with any kind of notice concerning its policy deficiencies or failure to train. *Figueira ex rel. Castillo v. County of Sutter*, No. 2:15-CV-00500, 2015 WL 6449151, at *8 (E.D. Cal. Oct. 23, 2015) (dismissing claim for municipal liability with leave to amend and noting "[plaintiff's] suicide alone does not plausibly establish that Yuba and Sutter County provided employees with inadequate training by de facto policy" even where two other deaths in the previous three years were alleged); *NeSmith v. Cty. of San Diego*, No. 15CV629, 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016) (holding that amended complaint "does not plausibly show that the County had notice of a pattern of suicides, such that failing to change its policies or provide additional training would lead to violations of constitutional rights" even where Plaintiffs pleaded statistics that San Diego County jail system had the highest mortality rate and second highest suicide rate among the state's largest jails such facts were "too vague to establish the pattern of violations necessary to prove deliberate indifference in § 1983 actions alleging failure to train or failure to implement policies"). Nor are there facts alleged to indicate that Corizon had notice of a particular policy deficiency. *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1103 (E.D. Cal. 2017)

---

[19] This is referred to at times as single-incident liability. *Connick*, 563 U.S. at 68.

(finding there was no deficient policy claim stated where Plaintiff did not allege facts available to city policymakers to put them on actual or constructive notice that allowing male officers to transport female detainees was deficient, and holding deliberate indifference required a "much more precise link between the conduct that put the municipality on notice and the alleged policy deficiency"). It appears that Plaintiff is attempting to argue the alleged "16 housing transfers" show a pattern – however, they do not actually show a pattern of similar *constitutional violations* that is required to show that a policy omission amounts to deliberate indifference on Corizon's part. *NeSmith*, 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016) (dismissing entity liability claims and stating "not every suicide that occurs in a jail is a result of a constitutional violation by a deputy or the County, so the pleaded facts would need to show not only a pattern of suicides, but a patter[n] of deliberate indifference to inmates' serious medical needs, in this case fairly obvious suicidal ideations"). A housing transfer is not a constitutional violation in and of itself. As discussed above, the transfers decisions into safer housing do not constitute deliberate indifference and do not provide support for Plaintiff's argument that Corizon had a constitutionally inadequate policy concerning housing decisions of its employees or that it failed to train them.

As discussed, the only housing decision that can plausibly support deliberate indifference to serious medical needs is Whitecotton's. From this decision alone, the Court is not able to plausibly infer from the FAC's allegations that "improper transfers of suicidal inmates happened so frequently that the need for corrective measures 'must have been plainly obvious to the policymakers.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1251-52 (9th Cir. 2010) (quoting *Canton*, 489 U.S. at 390 n.10), *overruled on other grounds by Castro*, 833 F.3d 1060. As for Whitecotton's decision to transfer Mayberry back to AS, "random acts or isolated events" are not sufficient to establish a custom for *Monell* liability. *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) ("[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of

carrying out policy") (internal citations omitted);[20] *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee"). Equivalently, isolated incidents do not put Corizon on "notice that a course of training is deficient in a particular respect, nor that the absence of such a course 'will cause violations of constitutional rights.'" *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick*, 563 U.S. at 62). Plaintiff has not alleged sufficient facts to show that Corizon had actual or constructive notice of a policy deficiency, and therefore has not sufficiently pled deliberate indifference for its *Monell* claims against Corizon.

### b.  <u>Single Incident *Monell* Liability Is Not Appropriate</u>

Additionally, the facts alleged do not lead the Court to find this to be in the narrow range of circumstances where single incident liability is appropriate. In *Conn v. City of Reno*, a case involving a pretrial detainee's suicide, the Ninth Circuit held that "[t]he failure to train officers on how to identify and when to report suicide risks produces a 'highly predictable consequence': that police officers will fail to respond to serious risks of suicide and that constitutional violations will ensue." *Conn v. City of Reno*, 591 F.3d 1081, 1103 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915, (2011), and *opinion reinstated*, 658 F.3d 897 (9th Cir. 2011).[21] However, after

---

[20] In *Oyenik*, the Ninth Circuit held that "[w]hile one or two incidents are insufficient to establish a custom or policy, we have not established what number of similar incidents would be sufficient to constitute a custom or policy." 696 F. App'x at 794 (internal citations omitted). The Ninth Circuit found that summary judgment was not proper where Plaintiff showed "at least a dozen instances of Corizon denying or delaying consultations, biopsies, and radiation treatment for his prostate cancer over the course of almost a year" and that a custom may be inferred from a pattern of behavior toward a single individual. *Id.* Those allegations are different in that they involved the denial of medical care whereas here Plaintiff appears to be alleging that Mayberry's housing transfers constituted inadequate medical care without more. Even taking the allegations in the light most favorable to Plaintiff, Plaintiff's allegations of two prior suicide attempts after housing transfers are not sufficient to establish a custom.

[21] *Conn* involved a pretrial detainee who, while being transported to jail by two officers, wrapped a seat belt around her neck and threatened that she would kill herself. *Id.* at 1090-91. The two officers did not report the incident to jail personnel or take her to the hospital. Forty-eight hours later she hung herself in her cell with a bedsheet after being assigned to the general inmate population, not placed on suicide watch, and allowed access to a bedsheet in her cell as a result. *Id.*

the Supreme Court's decision in *Connick v. Thompson*, the Ninth Circuit specifically vacated the portion of its prior opinion pertaining to *Monell* claims for both failure to train and failure to implement a policy– indicating that single-incident liability does not attach to cases involving inmate suicides presumably because failing to implement policies on suicide prevention did not constitute a "highly predictable consequence" of such policy failures. *Conn v. City of Reno*, 658 F.3d 897 (9th Cir. 2011);[22] *see also NeSmith*, 2016 WL 4515857, at \*12 (discussing Ninth Circuit's vacatur of its conclusions on municipal liability in *Conn* after *Connick* "signaled first that constitutional violations were not a highly predictable consequence of failing to train or failing to implement policies on suicide prevention, and the predictability of such violations was therefore insufficient to impose single-incident liability"); *Campos v. County. of Kern*, No. 114CV01099, 2017 WL 915294, at \*12 (E.D. Cal. Mar. 7, 2017) (granting summary judgment on *Monell* claim and holding because of "the lack of evidence of other suicides or county policy violations, the court cannot conclude that the need for more or different training was so obvious, and the inadequacy so likely to result in a violation of constitutional rights, that the county can be said to have been deliberately indifferent"). Accordingly, the Court finds Whitecotton's alleged deliberate indifference is insufficient to plead Corizon was deliberately indifference in failing to train its employees or for having inadequate policies.

---

[22] In *Conn*, the Ninth Circuit did not explicitly consider whether plaintiffs had established a pattern for purposes of *Monell* liability, but after vacating the opinion on the theory of single incident liability for failure to train and failure to implement policies, affirmed summary judgment for Defendant on those *Monell* claims despite six suicides in the jail in question in less than two years. 591 F.3d at 1103-04. In *Connick*, the Supreme Court found that four overturned convictions because of *Brady* violations committed by Connick's assistant district attorneys did not establish a pattern of violations to put Connick on notice for a need for better *Brady* training because none of those cases involved the failure to disclose the type of evidence involved in Thompson's case. 563 U.S. at 64 (concluding that a prosecutor's *Brady* violation was not a highly predictable consequence of the district attorney's office's failure to train on that topic, and was therefore insufficient for single-incident § 1983 government entity liability and reasoning in part that attorney's, unlike police officer's, were already "trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment").

c. **<u>Causation</u>**

There also must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385. The "requisite *causal connection*" can be established by "direct personal participation in the deprivation" or by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 836 (9th Cir. 1996) (internal citation omitted). The FAC still lacks specificity as to the *Monell* claims and as to what specific policies failures are attributable to Corizon. Plaintiff argues Corizon employees' "gratuitous volleying" in his housing ultimately led to Mayberry's death, but almost all the housing transfer decisions occurred almost a month prior to Mayberry's suicide and lack an affirmative causal link with the alleged constitutional violation or with a Corizon policy. (ECF No. 30 at 6.) Therefore, it is still not clear how Corizon's policies may have *caused* an alleged constitutional violation. *See Sahymus v. Tulare County*, No. 1:14-CV-01633-MCE, 2015 WL 3466942, at *6 (E.D. Cal. June 1, 2015) (holding that "omissions by policymakers can lead to liability under *Monell*, [but] Plaintiffs must still show that the omission caused an employee to commit a constitutional violation" and dismissing *Monell* claim where "Plaintiffs were unable to show the constitutional violation was caused by Corizon staff acting under a Corizon policy (or lack thereof)"); *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1150 (E.D. Cal. 2009) (dismissing *Monell* claims and holding that "without identifying the training and hiring practices, how those practices were deficient, and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct"); *Howard v. County of Tulare*, No. 1:16-CV-00076, 2016 WL 1756877, at *5 (E.D. Cal. May 3, 2016) (dismissing *Monell* claim against Corizon where Plaintiff failed to allege facts "explaining how the policy or custom was deficient, how it caused the alleged harm, and how the infirmity of the custom or policy was so obvious that policymakers were on notice that the constitutional injury was likely to occur"). The FAC does not allege facts that allow the Court to plausibly infer that there was a Corizon policy of inaction that somehow was the proximate

cause of the alleged constitutional deprivation or that the appropriate policy would have prevented the injury alleged. *Van Ort*, 92 F.3d at 837 ("[w]ithout proximate cause, there is no section 1983 liability").

In sum, the FAC has not alleged facts to show Corizon was on actual or constructive notice that constitutional violations were likely to result based on its alleged lack of policy covering its employees' housing transfer decisions. The FAC also has not alleged sufficient facts to show that a Corizon policy failure or failure to train caused or was the moving force behind the deprivation of Mayberry's constitutional rights. To the contrary, the housing decisions, besides Whitecotton's, do not lead to any discernible causal relationship with the alleged constitutional harm. There are not enough facts alleged to allow the Court to infer a plausible causal inference between any Corizon policy or custom and Mayberry's suicide.

Accordingly, Defendant Corizon's motion to dismiss the first, second, and fourth causes of action asserting § 1983 claims against Corizon is GRANTED WITHOUT LEAVE TO AMEND. Plaintiff has already been given the opportunity to amend the *Monell* claims against Corizon and failed to the correct the deficiencies identified in the Court's prior Order.[23]

### B.    Negligent Wrongful Death Claim Pursuant to CCP § 377.60

Corizon here argues that Plaintiff has not alleged factual allegations that plausibly suggest a wrongful death negligence claim, as Plaintiff only offers the same sparse allegations that underlie her Fourteenth Amendment claim and does not allege facts showing medically unacceptable care or causation. (ECF No. 29 at 9.) Plaintiff's opposition argues that "Defendants ignored Mayberry's obvious medical needs by failing to properly house him commensurate with the needs of an inmate who is at risk of

---

[23] Additionally, Plaintiff has sued Corizon Defendants Garcia, Yang, Kirikorian, Santos, Trow, and Whitecotton both in their individual and official capacities. (FAC ¶¶11, 17-21.) An official capacity claim against these Corizon employees is equivalent to stating a *Monell* claim for entity liability against Corizon for a unconstitutional policy or custom. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Accordingly, the official capacity claims against these defendants are dismissed for the reasons discussed herein.

harming himself. Defendants' decision to remove him from isolation housing and give him access to bed sheets necessarily resulted in his death. These facts support Plaintiff's wrongful death-negligence cause of action." (ECF NO. 30 at 9.)[24] Neither party spends more than half a page to brief their arguments in relation to the wrongful death negligence claim.

As the Court indicated in its prior Order, California Code of Civil Procedure § 377.60 establishes a separate statutory cause of action in favor of specified heirs of a person who dies as a result of the "wrongful act or neglect" of another. Cal. Civ. Proc. Code § 377.60. Under a wrongful death cause of action, the specified heirs are entitled to recover damages on their own behalf for the loss they have sustained by reason of the victim's death. *See Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 105 (1992). "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (2006) (emphasis in original) (internal citation omitted). Although it is a statutorily-created action, a wrongful death suit predicated on negligence must still contain the elements of actionable negligence. *Jacoves*, 9 Cal. App. 4th at 105 ("In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence"). A negligence claim requires proof that (1) defendant had a duty to use care, (2) defendant's breached that duty, and (3) the breach of duty was the proximate or legal cause of the resulting injury. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (internal citation omitted).

"In order to adequately allege a wrongful death claim, Plaintiffs must allege a wrongful act or neglect on the part of one or more persons that caused the death of another person." *Bock v. County of Sutter*, No. 2:11-CV-00536, 2012 WL 3778953, at *19 (E.D. Cal. Aug. 31, 2012). However, as discussed

---

[24] Plaintiff's assertion in this regard seems to indicate that it is only Defendant Whitecotton's transfer decision – which removed him from isolation housing and gave him access to bedsheets – that provides the basis for Plaintiff's negligence claim.

above, Plaintiff has not alleged any facts that show that Corizon Defendants Garcia, Yang, Kirkorian, Santos, or Trow breached a duty or acted wrongfully with respect to Decedent's housing transfers. *See McDaniels v. Cty. of San Joaquin*, No. CV 2:16-2007, 2017 WL 915356, at *3 (E.D. Cal. Mar. 7, 2017) ("the Complaint fails to allege any specific wrongful conduct by defendants, let alone conduct that the court could reasonably infer constitutes negligence"). Additionally, there is insufficient factual content alleged to show that any of these Defendants' decisions caused Decedent's suicide. Similarly, without sufficiently alleged facts concerning what the deficiency of the Corizon policies were and how they may have contributed to Decedent's suicide, the Court cannot infer that Corizon breached a duty or somehow caused Mayberry's death.

Accordingly, Corizon's motion to dismiss the fifth cause of action for wrongful death pursuant to Cal. Civ. Pro. Code § 377.60 is GRANTED WITHOUT LEAVE TO AMEND. Corizon Defendants Garcia, Yang, Kirikorian, Santos, and Trow are also dismissed as to this cause of action WITH LEAVE TO AMEND.[25] The claim against Corizon Defendant Whitecotton survives for the same reasons the § 1983 survives.

### C. Prayer for Injunctive Relief

Defendant also requests that the Court dismiss Plaintiff's request for injunctive relief because she lacks standing to pursue it. (ECF No. 29 at 9.) Despite the prior dismissal of the request for injunctive relief, the FAC's prayer for relief also requests the same injunctive relief without alleging any additional facts to show a "real or immediate threat that [Plaintiff] will be *wronged again*" in a similar way as required to establish standing to seek injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)

---

[25] As indicated above, the Court gives Plaintiff one final opportunity to amend the claims against the individual Corizon employees in an abundance of caution, since the specific factual allegations were not previously addressed in the Court's prior Order. However, the FAC failed to address the deficiencies with respect to Corizon after being given the opportunity to do so and therefore Plaintiff is not given leave to amend those claims.

(emphasis added); *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015).[26] Plaintiff still has not alleged facts to show she has standing to pursue injunctive relief in the amended complaint. Plaintiff in her opposition to the motion to dismiss withdraws her prayer for injunctive relief. (ECF No. 30 at 10.)

Accordingly, Corizon's motion to dismiss the injunctive relief is GRANTED WITHOUT LEAVE TO AMEND.

## V. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, Defendant Corizon's motion to dismiss the § 1983 claims and § 377.60 wrongful death claim is GRANTED WITHOUT LEAVE TO AMEND. The Court further GRANTS Corizon's motion to dismiss the injunctive relief sought WITHOUT LEAVE TO AMEND. The Court dismisses the claims against Corizon Defendants Garcia, Yang, Kirkorian, Santos, and Trow WITH LEAVE TO AMEND. The Court reiterates that this will be the last opportunity to amend since the Court is in the business of ruling, *not* writing Plaintiff's pleadings. Plaintiff shall file any amended complaint within twenty (20) days of electronic service of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated: __July 11, 2018__                 _____/s/ Lawrence J. O'Neill_____
                                                         UNITED STATES CHIEF DISTRICT JUDGE

---

[26] The Court refers to it is prior Order for a more detailed discussion concerning the dismissal of the injunctive relief. (ECF No. 16 at 14-15.)