UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMA DELONEY, successor in interest to DECEDENT JOHN MAYBERRY<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF FRESNO, *et al.*,<br><br>Defendants. | 1:17-cv-01336-LJO-EPG<br><br>ORDER DENYING CORIZON DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 46, 50, 52, 70) |

## I. **INTRODUCTION**

Plaintiff Wilma Deloney, Decedent John Mayberry's ("Decedent" or "Mayberry") mother, individually and as successor in interest to Mayberry's estate, brings claims pursuant to 42 U.S.C § 1983 ("§ 1983") and California Code of Civil Procedure § 377.60 ("§ 377.60") related to the suicide of Mayberry while in custody. Plaintiff sued the County of Fresno ("County"); deputy sheriffs Vinton, McCoy, Ramos, Canel, and Yusif; Corizon Health, Inc. ("Corizon"); Corizon mental health staff members Mai Yang, Donald Kirkorian, Jasmine Santos, Debbie Trow, and Marty Whitecotton, and Corizon licensed nurse Genevive Garcia ("Corizon employees" or "Corizon Defendants").

The Court previously ruled on two motions to dismiss made by Corizon and ultimately granted Corizon's second motion to dismiss without leave to amend. *See* ECF Nos. 16, 33. In the course of addressing Corizon's motion to dismiss, the Court found it efficient to deal with the claims against the individual Corizon Defendants who had not yet been served since the parties had briefed the legal issues

1

and there was significant overlap in the factual content. ECF No. 33 at 8 & n.10. In the prior Order, the Court dismissed all the individual Corizon Defendants *with* leave to amend except for Defendant Whitecotton. *Id.* at 8-14, 23-25. On July 31, 2018, Plaintiff filed a second amended complaint ("SAC") ECF No. 34. Corizon Defendants Genevieve Garcia, Donald Krikorian, Debbie Trow, Jasmine Santos, Mai Yang, and Marty Whitecotton filed multiple motions to dismiss after being served with the SAC, moving to dismiss the SAC's § 1983 claims and § 377.60 claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 46, 50, 52, 7 Plaintiff opposed, ECF Nos. 53-56, 72-73, and Defendants replied. ECF Nos. 60, 66, 74.[1] The matter was taken under submission on the papers pursuant to Local Rule 230(g). For reasons set forth below, Corizon Defendants' motions to dismiss are DENIED.

## II. FACTUAL BACKGROUND[2]

Decedent Mayberry was a pretrial detainee in Fresno County Jail ("Jail") at the time of his death on August 2, 2016. SAC ¶ 30. Corizon provided medical and nursing care to prisoners and detainees at Fresno County Jails pursuant to a contract with the County. *Id.* ¶ 10. The complaint alleges that Decedent was transferred multiple times between medium security housing, administrative segregation lockdown housing, safety housing, and isolation housing between March 11, 2016 and August 2, 2016. *Id.* ¶ 31. The SAC states that Mayberry was subject to at least 16 transfers during this period as a result of being deemed a threat to the safety of himself and others. *Id.* Such transfers were made at the direction of multiple Corizon mental health staff members and with the approval of multiple county employees. *Id.* Decedent was suicidal on multiple occasions at the Jail and was regarded as high suicide risk on prior occasions. *Id.* ¶ 42. Decedent's history in this regard was allegedly accessible to all Defendants,

---

[1] In the future the Court advises the parties to be more thoughtful and efficient in their filings – the multiple motions and oppositions were all nearly identical. It would save the Court time and resources if the parties filed a single motion or opposition with separate arguments with respect to each Defendant where appropriate rather than submitting multiple nearly identical filings.

[2] The following facts are drawn from Plaintiff's SAC in this matter and are accepted as true only for the purpose of this motion to dismiss. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). The Court focuses on the allegations concerning Corizon employees since the pending motions are brought by these employees.

including the Corizon employees. *Id.* ¶¶ 42-43.

The SAC alleges that on June 27, 2016, a county officer interviewed Mayberry and Mayberry told him that he suffered from mental health issues. *Id.* ¶ 32. On July 2, 2016, Mayberry told Corizon and County staff that he was hearing voices in his head telling him to kill himself. *Id.* ¶ 33. As a result, Corizon Defendant Garcia evaluated Mayberry on the same day and recommended he be transferred from administrative segregation lockdown housing ("AS") to a safety cell for being a danger to himself. *Id.* Garcia noted the need to reduce or eliminate Mayberry's suicidal ideations but besides the housing transfer, took no further steps to address Mayberry's needs such as sending him to a mental health facility, evaluating medication needs, or providing Mayberry with psycho-education material. *Id.* Later on that same day, Corizon Defendant Yang transferred Mayberry back to AS without taking any steps to ensure Mayberry's safety. *Id.* ¶ 34. On July 3, Corizon Defendant Kirkorian recommended Mayberry be transferred to a safety cell due for being a danger to himself but took no further steps to ensure his safety. *Id.* ¶ 35. On July 4, 2016, Corizon Defendant Santos recommended that Mayberry be transferred back to AS. *Id.* ¶ 36. Later on July 4, 2016, Mayberry attempted suicide by attempting to hang himself with a bedsheet. *Id.* ¶ 37. Subsequently, Corizon Defendant Garcia recommended he be transferred to a safety cell due for being a danger to himself. *Id.* On July 5, 2016, Corizon Defendant Trow recommended that Mayberry be transferred to an isolation cell and restricted to use of safety cell garments and blankets to prevent self-harm but took no other steps to ensure Mayberry's safety. *Id.* ¶ 38.

On July 12, 2016, Corizon Defendant Whitecotton performed a mental health evaluation of Mayberry as a follow-up to Decedent's July 4 suicide attempt. *Id.* ¶ 39. On July 23, 2016, with the knowledge of Mayberry's high suicide risk and recent suicide attempt, Defendant Whitecotton recommended Mayberry be transferred back to AS, lifted Mayberry's housing and garment restrictions, allowing Mayberry to have access to standard issue blankets and sheets which he had previously attempted suicide with, and reduced his visual monitoring to once per hour. *Id.* ¶¶ 39, 53. On July 27, 2016, Mayberry attempted suicide and another inmate used the intercom to alert County correction

officers; however, County Defendants did not respond. *Id.* ¶ 40. Corizon Defendants did not evaluate Mayberry or attempt to intervene following this suicide attempt and it appears no housing or other precautions were taken after this attempt. *Id.*

On August 2, 2016, while under the supervision of County Defendants Ramos and Canel in the AS unit, but not on heightened suicide watch, Decedent's pleas for help were ignored by County Defendants Ramos and Canel and Mayberry hanged himself in his cell. *Id.* ¶ 44. The complaint further alleges that Defendants Canel and Ramos[3] did not conduct actual checks of Decedent "for an extended period of time in violation of County policies[,]" which required visual monitoring not less than twice every thirty minutes for high suicide risk individuals *Id.* ¶¶ 41, 44. Plaintiff alleges that Corizon Defendant Whitecotton knew of Decedent's previous attempt to hang himself using bed sheets on July 4, 2016, but nonetheless allowed Mayberry to have access to "instrumentalities of suicide," including bedsheets, and allowed for reduced visual monitoring of Decedent to once per hour by transferring him to AS, which ultimately resulted in his suicide on August 2, 2016. *Id.* ¶ 53; *see also id.* ¶ 45.

Plaintiff alleges that Decedent was deprived of his constitutional right to life and mental health care for his serious mental health needs, eventually causing his suicide. *Id.* ¶ 27. Plaintiff Deloney, Decedent's mother, brings these claims as Decedent's successor in interest and individually for the deprivation of her right to her familial relationship with her son. *Id.* ¶¶ 8, 58. Plaintiff brings claims against the County; several deputy sheriffs employed by the County; and six Corizon employees, Defendants Garcia, Yang, Kirkorian, Santos, Trow, and Whitecotton. *Id.* ¶¶ 11, 17-21.[4] Besides Defendant Garcia who is alleged to be a licensed nurse, the remaining Corizon employees are alleged

---

[3] The SAC has also added two County Defendants, Defendant Corporal De La Cruz and Defendant Officer C. Delagarza, without leave from the Court. *Id.* ¶¶ 22-23, 32, 44.

[4] Despite the Court's order dismissing Corizon as a Defendant without leave to amend, the SAC named Corizon as a Defendant. *See* ECF Nos. 33, 34. The Court directed the Clerk of the Court to terminate Corizon as a Defendant in this matter ECF No. 45. Similarly, the SAC repeats official capacity claims against the individual Corizon Defendants which the Court also dismissed without leave to amend. See ECF No. 33 at 23 & n.23. The allegations referring to Corizon and the dismissed official capacity claims are accordingly ignored.

4

to be mental health staff members. *Id.* ¶¶ 11, 17-21.

The SAC, like the FAC, contains five causes of action, four of which arise under 42 U.S.C. § 1983. *Id.* ¶¶ 50-79. Plaintiff's first cause of action alleges § 1983 claims against all the Defendants for wrongful death for deliberate indifference to Decedent's serious medical, physical, and mental health needs during his detention and for not taking measures such as sending Mayberry to the hospital, evaluating if he may require medication, or taking steps to reduce his suicidal ideations. *Id.* ¶¶ 50-55. Plaintiff's second cause of action alleges that Defendants' actions deprived Plaintiff of her parent-child relationship with her son in violation of Plaintiff's Fourteenth Amendment right to substantive due process. *Id.* ¶¶ 56-59.[5] Plaintiff's fourth cause of action alleges violation of Decedent's right to substantive due process under Fourteenth Amendment against all Defendants for deliberate indifference to Decedent's medical and psychiatric care by transferring him to administrative segregation and allowing him to have access to the "instruments of suicide." *Id.* ¶¶ 68-72. The fifth cause of action is against all Defendants for Mayberry's wrongful death under a theory of negligence pursuant to California Code of Civil Procedure § 377.60. *Id.* ¶¶ 73-79.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's

---

[5] Plaintiff's third cause of action is not directly relevant to this motion since it is not brought against any Corizon employees but alleges *Monell* liability against the County and unnamed defendants for customs, practices, and policies. *Id.* ¶¶ 60-67.

5

favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.

1990) (citations omitted).

## IV. DISCUSSION

Corizon Defendants Garcia, Kirkorian, Trow, Yang,[6] Santos, and Whitecotton move to dismiss the four causes of action that Plaintiff has brought against them, including three causes of action pursuant to § 1983 for deliberate indifference for providing inadequate medical care, and a wrongful death negligence claim pursuant to California Civil Procedure Code § 377.60.[7] The parties' briefing addresses the § 1983 claims as if there is a single § 1983 claim by addressing the legal standard for deliberate indifference for inadequate medical care with respect to the individual Corizon employees. The Court correspondingly addresses the parties' § 1983 arguments in this way. The Corizon Defendants all make the identical argument that Plaintiff's allegations fail to state a Fourteenth Amendment claim against any Corizon employee because there are no alleged facts to support the necessary elements of such claims, including that Plaintiff has not alleged facts to show that Defendants had a duty to act differently. *See generally* ECF Nos. 46, 50, 52, 70. In a single sentence, Corizon Defendants submit that Plaintiff also states no negligence claim. *Id.* at 4-5. Plaintiff's opposition argues that the SAC adequately alleges that each Corizon employee was well aware of the substantial risk of harm that Mayberry posed to himself and despite that knowledge provided him with instrumentation to hang himself. *See generally* ECF Nos. 53-56, 72-73.[8]

---

[6] Defendant's motion refers to May Vang without explanation. *See* ECF No. 50. The Court assumes that this spelling refers to the SAC's Defendant Mai Yang and in fact references the same individual. The Court will refer to the Defendant as Mai Yang for consistency with the SAC.

[7] In their motion to dismiss, Corizon Defendants do not distinguish between the first, second, and fourth causes of action. *See generally* ECF No. 46, 50, 52. 70. Plaintiff does not differentiate between the three § 1983 claims in her oppositions either. ECF Nos. 53-56, 72-73. To the extent that the first, second, and fourth causes of action overlap in the legal theories of liability they claim under § 1983, the Court does not address them separately. *Compare* SAC ¶ 55, 59 *with id.* ¶ 72. The Court notes that it appears from the allegations that the fourth cause of action is no different from the first cause of action. *See, e.g.*, *Estate of Vargas v. Binnewies*, No. 1:16-cv-01240-DAD-EPG, 2017 WL 2289357, at *2 n.4 (E.D. Cal. May 25, 2017).

[8] Plaintiff has attached various documents as exhibits to certain oppositions. *See* ECF Nos. 53, 54, 72, 73. The Court does not find it necessary or appropriate to consider these documents in addressing the motions to dismiss particularly since Plaintiff does not address the propriety of doing so and does not take the time to explain their significance. *See NeSmith v. County of San Diego*, No. 15CV629 JLS (JMA), 2016 WL 4515857, at *15 (S.D. Cal. Jan. 27, 2016) (courts may consider extrinsic evidence on a motion to dismiss without converting it to a motion for summary judgment if the authenticity of the documents are not contested and the complaint necessarily relies on them or a court may take judicial notice of "matters of public record" under Federal Rule of Evidence 201).

7

The court addresses the sufficiency of the § 1983 and § 377.60 claims below. The Court also addresses Corizon Defendants' motion to dismiss the request for injunctive relief and request for a more definite statement.

### A. Section 1983 Claims

To state a claim under § 1983, plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendant's conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).[9] Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct. *See Lemire v. Cal. Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[T]he Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks omitted). The cognizable level of executive abuse of power is that which "shocks the conscience" and "violates the decencies of civilized conduct." *Id.* at 846. Mere negligence or liability grounded in tort does not meet the standard for a substantive due process claim. *Id.* at 848-49. A Plaintiff can satisfy the "shocks the conscience" standard either by (1) showing that a state official acted with "deliberate indifference," or (2) showing that a state official "acted with a purpose to harm." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Plaintiff alleges that six Corizon Defendants, Garcia, Kirkorian, Yang, Santos, Trow, and Whitecotton, were deliberately indifferent to Mayberry's serious medical and mental health needs for being a high suicide risk.[10]

---

[9] It is undisputed that these Corizon employees were acting under the color of state law.
[10] *See Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011) ("The gravamen of [Plaintiff's] claim against [Defendant Sheriff] is deliberate indifference."); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a deliberate indifference standard.") (internal quotation marks and citation omitted).

"The duty to protect detainees from suicide is grounded in the substantive liberty interest to adequate medical care." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017). To state a § 1983 deliberate indifference claim for inadequate medical care, a prisoner plaintiff must allege both a serious medical need and that defendant official acted with a culpable state of mind, *i.e.* with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *Estate of Joshua Claypole v. County of San Mateo*, No. 14-CV-02730, 2016 WL 127450, at *5 (N.D. Cal. Jan. 12, 2016) ("To set forth a constitutional claim under the Eighth Amendment – or, here, under the Fourteenth Amendment – a plaintiff must show (1) a serious medical need and (2) that an official's response to the need was deliberately indifferent.").[11] A "heightened" risk of suicide is considered a serious medical need. *Simmons*, 609 F.3d at 1018. Plaintiff has alleged sufficient facts to show that Decedent was at high risk for suicide based on his previous suicide attempt(s) and satisfies the first prong.[12] With respect to the second prong, acting with deliberate indifference, the Ninth Circuit recently announced an objective deliberate indifference standard is applicable to a pretrial detainee claims against individual defendants for inadequate medical care under the Fourteenth Amendment and explained the elements of such a claim:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to

---

[11] Here, the SAC alleges that Mayberry was a pretrial detainee. SAC ¶ 30. Accordingly, the Fourteenth Amendment applies. *See Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002) ("Because [a pretrial detainee] ha[s] not been convicted of a crime, but ha[s] only been arrested, [the detainee's right to receive adequate medical care] derive[s] from the due process clause [of the Fourteenth Amendment] rather than from the Eighth Amendment's protection against cruel and unusual punishment.") *overruled on other grounds by Castro*, 833 F.3d 1060 (9th Cir. 2016). The Ninth Circuit recently held that a pretrial detainee's claims against individual defendants for inadequate medical care under the Fourteenth Amendment due process clause "must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). This overruled the existing precedent which previously held that the same subjective deliberate indifference standard that applied to Eight Amendment claims applied to Fourteenth Amendment claims by pretrial detainees. This objective deliberate indifference standard is less stringent than the standard applicable under the Eighth Amendment. *Id.* at 1125 n.4.

[12] Defendants' argument to the contrary in their motions, *see* ECF Nos. 46, 50, 52 at 5, is rejected, given the allegations in the SAC that state as much. Additionally, Defendant's argument that the Defendants owed Plaintiff no duty of care, ECF No. 50 at 6, is rejected. It is well established that in the prison context, pretrial detainees have a right to adequate medical care, including suicide prevention. *See Atayde*, 255 F. Supp. 3d at 988.

abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1124-25. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 at 1071).

The specific allegations in the SAC concerning the actions of the individual Corizon employees are "16 housing transfers" from March to August of 2016. SAC at ¶ 31. As an initial matter, the Court counts seven specifically alleged housing transfers enumerated in the SAC – not 16. SAC at ¶¶ 33-39.[13] Specifically, Plaintiff alleges the following transfers: (1) on July 2, Corizon Defendant Garcia transferred Mayberry from AS to a safety cell for being a danger to himself, after he told staff that he was hearing voices in his head telling him to kill himself; (2) later on July 2, Corizon Defendant Yang moved Mayberry from the safety cell back to AS; (3) on July 3, Corizon Defendant Kirkorian moved Mayberry to a safety cell for being a danger to himself; (4) on July 4, Corizon Defendant Santos moved Mayberry from the safety cell back to AS; (5) on July 4, following Mayberry's suicide attempt on that day, Corizon Defendant Garcia recommended he be transferred into a safety cell; (6) on July 5, Corizon Defendant Trow moved Mayberry from his safety cell to an isolation cell; (7) on July 23, Corizon Defendant Whitecotton moved Mayberry from his isolation cell back to AS where he was allowed access to standard issue garments. *Id*.

However, the SAC also adds some specific facts that are relevant in the context of these transfers. First, on June 27, 2016, a County employee interviewed Mayberry and Mayberry told him that he had mental health issues. *Id.* ¶ 32. On July 2, Mayberry told Corizon staff he was hearing voices telling him to kill himself. *Id.* ¶ 33. Also on July 2, Garcia evaluated Mayberry and noted the need to

---

[13] To the extent there were other housing transfers not specifically alleged, the Court is not able to draw any inferences from such unspecified transfers.

1  "reduce/eliminate [Mayberry's] suicidal ideations" before transferring him to a safety cell that day *Id.* ¶ 33. There are two alleged suicide attempts in the SAC. The first attempt occurred on July 4, where Mayberry attempted to hang himself with a bedsheet while in AS, after which Mayberry was moved into a safety cell and then into an isolation cell. *Id.* ¶ 37. On July 12, while Mayberry was in an isolation cell with garment restrictions, Whitecotton performed a mental health evaluation as a follow-up to Mayberry's July 4 suicide attempt and he recommended Mayberry be transferred to AS and lifted garment restrictions, giving Mayberry access to standard issue blankets, including bedsheets which Mayberry used in his previous suicide attempt. *Id.* ¶ 39. The second attempt occurred on July 27, by unspecified means while Mayberry was housed in AS. *Id.* ¶ 40. The SAC also alleges that Corizon staff knew of or should have known of these suicide attempts *Id.* ¶ 43. After the second attempt, apparently nothing was done by way of housing transfer or otherwise, and Corizon employees did not evaluate Mayberry or attempt to intervene, which ultimately resulted in his suicide while he was in AS on August 2. *Id.* ¶¶ 40, 44.

### 1. Defendants Garcia, Kirkorian, and Trow

Four of the seven alleged housing transfers actually involved placing Mayberry in *safer* housing presumably based on his needs of being at risk for suicide. These are the actions that are alleged as to Defendants Garcia, Kirkorian, and Trow. These precautionary transfers did not "put the plaintiff at substantial risk of suffering serious harm" but rather show reasonable measures taken to abate the risk to Mayberry. *See Gordon*, 888 F.3d at 1124-25. Accordingly, these four transfer decisions that put Plaintiff in safer conditions do not support an inference that any of these Corizon employees were deliberately indifferent to Mayberry's serious medical needs. *See, e.g.*, *Claypole*, 2016 WL 693282, at *10 (granting summary judgment to defendant who was the shift supervisor and holding no reasonable juror could find defendant's response to serious medical need - expressing a suicidal ideation - was inadequate when defendant put decedent on suicide watch and into a safety cell and notified jail staff so that he would be evaluated). In short, these housing decisions are not examples where "a jail official

knew a pretrial detainee was actively suicidal but failed to ensure that precautionary measures were undertaken." *Simmons*, 609 F.3d at 1018.

However, the SAC's additional allegations appear to put forth the following theory of liability – because these Corizon Defendants did not take any further steps besides the safety housing transfer, such as sending Mayberry to a mental health facility, evaluating Mayberry for medication needs, or providing Mayberry with psycho-education materials for coping strategies, they were deliberately indifferent to Mayberry's serious medical needs since they were aware of or should have been aware of his suicidal ideations and should have done more to address the risk or followed up after the housing transfer. *See* SAC at ¶¶ 33, 35, 37, 38. It is also alleged that on July 2, 2016, before Defendants Garcia, Kirkorian or Trow made the safety housing transfers, Defendant Garcia evaluated Mayberry and noted the need to "reduce/eliminate [Decedent's] suicidal ideations" and that he told Corizon staff that he was hearing voices. *Id.* ¶ 33.

While the SAC still lacks some clarity, at this stage of the proceedings, the Court finds that the SAC has sufficiently alleged a plausible deliberate indifference claim against Defendants Garcia, Kirkorian, and Trow for not taking any additional steps besides placing him in safety housing after allegedly knowing Mayberry had reported hearing voices in his head to kill himself. "This duty to provide medical care encompasses detainees' psychiatric needs." *Gibson*, 290 F.3d at 1187. While it is not clear whether a safety housing transfer was sufficient to address Mayberry's serious medical needs, Plaintiff has alleged enough for a plausible deliberate indifference claim. "At this stage in the pleadings, the Court will not engage in an extensive analysis of the adequacy of the mental health system in place at the jail. . . . [T]he Court may infer from the allegations of the FAC that after it was noted in Decedent's file that he was suicidal, Defendant[s] may bear some responsibility for the failure to provide care which led to Decedents' death." *Estate of Jessie P. Contreras v. County of Glenn*, No. 2:09-CV-2468-JAM-EFB, 2010 WL 4983419, at *4 (E.D. Cal. Dec. 2, 2010); *Smith v. County of San Diego*, No. 11-CV-0356-JLS (WVG), 2012 WL 628307, at *5 (S.D. Cal. Feb. 27, 2012) (denying motion to dismiss where

court was able to draw reasonable inference that Defendants exhibited deliberate indifference by failing to provide Decedent "proper medical treatment and medications to control his serious mental issues" causing Decedent's violent death by choking asphyxiation by prison officers); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010) (noting in denying summary judgment that neglecting to determine if additional care was needed—along with other actions—provided circumstantial evidence from which a jury could infer deliberate indifference), *overruled on other grounds by Castro*, 833 F.3d 1060.

Whether Plaintiff will be able to present evidence supporting the claims against these Defendants is not clear; however, the allegations are sufficient to survive a motion to dismiss. *See, e.g.*, *Bremer v. Cty. of Contra Costa*, No. 15-CV-01895-JSC, 2016 WL 6822011, at *9 (N.D. Cal. Nov. 18, 2016) ("Ultimately, the objective standard does not require a defendant to take *all* available measures to abate a plaintiff's risk of suffering serious harm. While it might have been a good idea to monitor David constantly—while he ate or otherwise—that does not render the deputies' decision not to do so reckless, or objectively unreasonable, under the circumstances presented.") (emphasis in original). Viewing the SAC in the light most favorable to Plaintiff, the additional allegations are enough to plausibly allege a deliberate indifference claim against these Defendants. Plaintiff has alleged that these Defendants were aware of Mayberry's high risk of suicide via Defendant Garcia's evaluation that indicated steps needed to be taken to reduce his suicidal ideations and further alleged that Mayberry had told Corizon staff that he was hearing voices telling him to kill himself. While the safety housing transfers were a step to abate the risk of suicide, more may have been reasonably necessary to abate the risk. A complete failure to treat the prisoner is not a prerequisite. *Ortiz v. Imperial,* 884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is competent and can render competent care") (citation omitted). Deliberate indifference may be shown when "prison officials deny, delay[,] or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988); *see also Toguchi v.*

*Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'") (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Whether more was required by Defendants Garcia, Kirkorian, and Trow will "involve[] an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Ultimately, Plaintiff must present evidence that will show that it was obvious that there was a risk that Defendant would attempt to kill himself and that the safety housing transfers were not sufficiently reasonable measures to abate the risk. These are question which require further factual development, but the allegations in the SAC are sufficient to state a claim.

Accordingly, the Court DENIES the motions to dismiss as to Defendants Garcia, Kirkorian, and Trow.

### 2. **Defendants Yang and Santos**

In contrast to the FAC, the SAC now includes facts concerning the timing of the when Mayberry was expressing suicidal ideations. The SAC alleges Defendant Garcia evaluated Mayberry and noted the need to reduce his suicidal ideations as early as July 2, if not earlier. *Id.* ¶¶ 32-33. On that same day, Garcia recommended that Mayberry be placed in a safety cell due to being a danger to himself. *Id.* Later on July 2, Defendant Yang recommended that Mayberry be transferred back to AS without any further evaluation. *Id.* ¶ 34. After Defendant Kirkorian transferred Mayberry to a safety cell on July 3, Defendant Santos then recommended that Mayberry be placed back in AS on July 4, despite the prior indication of suicidal ideation. *Id.* ¶ 36. After Defendant Santos' transfer on July 4, Mayberry attempted to commit suicide on that same day by using a bedsheet to hang himself. *Id.* ¶ 37. Both these transfers may indicate deliberate indifference since there is now enough in the SAC to infer that Defendants Yang and Santos should have been aware of Mayberry's suicide risk prior to making the housing transfers and

the SAC also alleges that they did nothing to evaluate Mayberry before transferring him out of his safety cell despite the recent history and obvious risk. *See, e.g.*, *Clouthier*, 591 F.3d at 1245 ("In light of her understanding that Clouthier was not 'out of the woods' yet, . . . a reasonable mental health professional could not have thought it was lawful to remove key suicide prevention measures put in place by a prior Mental Health staff member.").

A "reasonable official in the circumstances would have appreciated the high degree of risk involved" at that point in time, given the July 2 medical evaluation indicating a risk of suicide along with the recent placements in safety cells within a day of Defendants Yang and Santos deciding to remove him from the safety cell. *See generally Gordon*, 888 F.3d at 1124-25. On the same day that Defendant Santos moved Mayberry to AS, Mayberry attempted to hang himself with a bedsheet – something he presumably would not have had access to if he had remained in a safety cell. "It is not necessary, moreover, that a serious medical need imminently result in death—an attempted suicide is sufficient." *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *and opinion reinstated*, 658 F.3d 897 (9th Cir. 2011).[14]

The SAC adequately alleges that reasonable medical staff in Defendants Yang and Santos' positions would have appreciated a high degree of risk in transferring Mayberry to AS without evaluation given the July 2 medical evaluation and the very recent placements in safety cells. The decisions resulted in an attempted suicide on July 4. The allegations in the SAC are sufficient to state a plausible deliberate indifference claim. Therefore, Defendants Yang and Santos' motions to dismiss are DENIED.

### 3. **Defendant Whitecotton**

---

[14] The Supreme Court vacated and remanded *Conn* to the Ninth Circuit for further consideration in light of the decision in *Connick v. Thompson*, 563 U.S. 51 (2011). The Ninth Circuit reinstated a portion of the opinion and vacated a portion of the opinion that related to municipal liability that is not relevant here but was addressed in this Court's prior order. *See* ECF No. 33 at 20-21.

Despite the Court's prior ruling finding the FAC plausibly alleged a § 1983 claim against Defendant Whitecotton, Defendant has chosen to ignore the prior Order in making his motion. The SAC's allegations remain substantially similar if not identical with respect the viability of the claims against Defendant Whitecotton. Nevertheless, the Court will reiterate the prior Order's analysis here since it appears counsel did not bother to read the prior Order before filing a motion on behalf of Defendant Whitecotton.

After the July 4 suicide attempt, Defendant Trow transferred Mayberry to an isolation cell. SAC at ¶ 38. The SAC alleges that on July 12, Defendant Whitecotton performed a mental health evaluation as a follow-up to the July 4 suicide attempt and that on July 23, Whitecotton, with knowledge of the recent suicide attempt and Mayberry's high suicide risk, recommended Mayberry be transferred to AS and lifted his garment restrictions. *Id.* ¶ 39. Additionally, it is alleged that Mayberry attempted suicide again on July 27, and that Corizon staff did not evaluate Mayberry or attempt to intervene in any way following this attempt. *Id.* ¶ 40. The SAC faults Whitecotton as the decisionmaker for allowing Mayberry to move to and stay in AS and have access to the "instruments of suicide" even though he was aware that Mayberry had attempted suicide on July 4 with a bedsheet, and also for reducing visual monitoring of Mayberry. *Id.* ¶ 53. Accordingly, these alleged acts could plausibly demonstrate Defendant Whitecotton's deliberate indifference to Mayberry's serious medical needs when he transferred Mayberry to AS on July 23, 2016 after a July 4, 2016 suicide attempt. This transfer effectively reduced visual monitoring and lifted safety cell garment restrictions. Mayberry again attempted suicide on July 27 and it appears that Whitecotton did not reinstate any garment restrictions following the July 27 attempt. Whitecotton's decision to allow Decedent access to bedsheets which he had recently attempted suicide with and his failure to respond with any precautionary measures to a second suicide attempt despite the allegations that he was aware of the risk of harm, plausibly states a claim for deliberate indifference to Decedent's serious medical need of being a high suicide risk.

Accordingly, the motions to dismiss the § 1983 claims as to Corizon Defendants Garcia, Yang,

Kirkorian, Santos, Trow, and Whitecotton are DENIED.

**B.     Negligent Wrongful Death Claim Pursuant to CCP § 377.60**

The parties' briefing again does not substantively address the wrongful death negligence claim under CCP § 377.60 except to sweep it into their arguments concerning whether the § 1983 claim(s) should be dismissed. *See, e.g.*, ECF No. 46 at 4.

As the Court indicated in its prior Order, California Code of Civil Procedure § 377.60 establishes a separate statutory cause of action in favor of specified heirs of a person who dies as a result of the "wrongful act or neglect" of another. Cal. Civ. Proc. Code § 377.60. Under a wrongful death cause of action, the specified heirs are entitled to recover damages on their own behalf for the loss they have sustained by reason of the victim's death. *See Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 105 (1992). "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (2006) (emphasis in original) (internal citation omitted). Although it is a statutorily-created action, a wrongful death suit predicated on negligence must still contain the elements of actionable negligence. *Jacoves*, 9 Cal. App. 4th at 105 ("In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence."). A negligence claim requires proof that (1) defendant had a duty to use care, (2) defendant breached that duty, and (3) the breach of duty was the proximate or legal cause of the resulting injury. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (internal citation omitted).

"In order to adequately allege a wrongful death claim, Plaintiffs must allege a wrongful act or neglect on the part of one or more persons that caused the death of another person." *Bock v. County of Sutter*, No. 2:11-cv-00536-MCE-GGH, 2012 WL 3778953, at *19 (E.D. Cal. Aug. 31, 2012). Plaintiff's wrongful death claim is predicated on the same allegations as her claims for deliberate indifference. As such, for the same reasons the Court concluded that Plaintiff has alleged sufficient facts to a state a §

17

1983 claim for deliberate indifference as to Defendants Garcia, Yang, Kirkorian, Santos, Trow, and Whitecotton, it follows that Plaintiff has sufficiently pled the § 377.60 wrongful death claim. *See Lemire v. California Dep't of Corr. & Rehab.,* 726 F.3d 1062, 1081-82 (9th Cir. 2013) (holding that the bar for a deliberate indifference claim is much higher than that of negligence claim and "[e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs"); *Wright v. Yanos*, No. 2:15-cv-02671-TLN-CKD, 2017 WL 6040335, at *6 (E.D. Cal. Dec. 6, 2017) ("[T]he plaintiffs can prevail on a wrongful death claim by merely establishing negligence, which has been defined as 'the want of such care as a person of ordinary prudence would exercise under the circumstances of the case, [and] may consist in heedlessly doing an improper thing or heedlessly refraining from doing a proper thing.'") (quoting *Crabbe v. Rhoades*, 101 Cal. App. 503, 510 (1929)).

Accordingly, Corizon Defendants' motion to dismiss the fifth cause of action for wrongful death pursuant to Cal. Civ. Pro. Code § 377.60 is DENIED.

### C. Prayer for Injunctive Relief

The Corizon Defendants also request that the Court dismiss Plaintiff's request for injunctive relief. *See* ECF Nos. 46 at 8; 50 at 7; 52 at 7. In a prior Order, this Court already dismissed the injunctive relief without leave to amend. ECF No. 33 at 25-26. Plaintiff made no effort to amend the SAC according to the Court's prior Order and instead stated in the opposition that the request for injunctive relief is withdrawn. *See* ECF No. 53 at 8. Regardless, the prayer for injunctive relief has been dismissed and the continued reference to it in the SAC will be ignored.

### D. Corizon Defendants' Request for a More Definite Statement

Corizon Defendants Yang, Santos, Trow, and Whitecotton request that Plaintiff provide a more definite statement if the motions to dismiss are denied. ECF Nos. 46 at 7; 50 at 7; 52 at 7. Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A Rule 12(e) motion is proper only where the complaint is

so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1179-80 (C.D. Cal. 2007) (quoting *Sagan v. Apple Computer, Inc.,* 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)). "Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." *Id.* "[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996). As the Court already found, the SAC has enough detail to plausibly allege § 1983 deliberate indifference and negligence claims against the Corizon Defendants. The allegations are not so vague that Defendants cannot reasonably prepare a response and the SAC "give[s] the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. Corizon Defendants' request for a more definite statement is DENIED.

## V. **CONCLUSION AND ORDER**

For the reasons set forth above, Corizon Defendants' motions to dismiss, ECF Nos. 46, 50, 52, 70, are DENIED.

IT IS SO ORDERED.

Dated: __**April 26, 2019**__                  __/s/ Lawrence J. O'Neill__
                                                                        UNITED STATES CHIEF DISTRICT JUDGE